**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| **ULTRAPETROL (BAHAMAS) LIMITED,** *et al.*, | : | **17-22168 (RDD)** |
| **Debtors.**[1] | : | **(Jointly Administered)** |

-------------------------------------------------------------------x

## ORDER (I) APPROVING THE DEBTORS' (A) DISCLOSURE STATEMENT, (B) SOLICITATION OF VOTES AND VOTING PROCEDURES, AND (C) FORMS OF BALLOTS AND (II) CONFIRMING THE DEBTORS' SECOND AMENDED PREPACKAGED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

The Debtors' Second Amended Prepackaged Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated February 6, 2017 (ECF No. 16) having been jointly proposed by the Plan Debtors,[2] as debtors and debtors in possession in the above-captioned chapter 11 cases, and filed with the United States Bankruptcy Court for the Southern District of New York (the "Court") on February 6, 2017 (as amended, modified, supplemented, or restated, the "Plan"), and the Plan Debtors having filed with the Court on February 6, 2017 (a) the Disclosure Statement, dated November 30, 2016 (ECF No. 18) (the "November 30 Disclosure Statement"), including the form of the Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code attached thereto (the "Original Plan"), and the Supplement to

---

1.  The Debtors in these chapter 11 cases are the following entities: Ultrapetrol (Bahamas) Limited; Arlene Investments, Inc.; Brinkley Shipping Inc.; Cedarino S.A.; Compañia Paraguaya De Transporte Fluvial S.A.; Dampierre Holdings Spain, S.A.; Danube Maritime Inc.; Dingle Barges Inc.; Eastham Barges Inc.; General Ventures Inc.; Hallandale Commercial Corp.; Longmoor Holdings Inc.; Marine Financial Investment Corp.; Massena Port S.A.; Oceanpar S.A.; Parabal S.A.; Parfina S.A.; Princely International Finance Corp.; Regal International Investments S.A.; Riverpar S.A.; Riverview Commercial Corp.; Thurston Shipping Inc.; UABL Barges (Panama) Inc.; UABL Limited; UABL Paraguay S.A.; UABL Towing Services S.A.; UABL S.A.; Ultrapetrol S.A.; UPB (Panama) Inc.; UP River (Holdings) Ltd. (Bahamas); and UP River Terminals (Panama) S.A. The foreign equivalent of an EIN, if any, for each Debtor is set forth in its chapter 11 petition.

2.  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan. The rules of construction in section 102 of the Bankruptcy Code shall apply to this Order.

the Disclosure Statement, dated January 17, 2017 (ECF No. 20) (the "Disclosure Statement Supplement"; and the November 30 Disclosure Statement as supplemented by the Disclosure Statement Supplement, the "Disclosure Statement"), including the Amended Plan attached thereto, (b) the Plan Supplement (ECF No. 20) (the "Plan Supplement"), (c) the Declaration of Damián Scokin  Pursuant to Local Bankruptcy Rule 1007-2 (ECF No. 32) (the "Scokin Declaration"), and (d) the Certification of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast On the Debtors' Second Amended Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code, sworn to by Christina Pullo of Prime Clerk LLC (ECF No. 21) (the "Vote Certification"); and the Second Certification of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast On the Debtors' Second Amended Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code, sworn to by David M. Sharp of Prime Clerk LLC (ECF No. 61) having been filed with the Court on February 16, 2017 (the "Second Vote Certification"); and the Court having entered on February 10, 2017 the Order (I) Scheduling a Combined Hearing to Consider Approval of Disclosure Statement, Solicitation Procedures and Forms of Ballots, and Confirmation of Debtors' Second Amended Prepackaged Plan of Reorganization and Establishing Deadlines With Respect Thereto, (II) Directing Waiver or Deferral of Section 341(a) Meeting, and (III) Approving the Form and Manner of Notice of Commencement of Chapter 11 Cases, Waiver or Deferral of Section 341(a) Meeting, Combined Hearings, and Related Deadlines and Matters (ECF No. 47) (the "Scheduling Order"), among other things scheduling a combined hearing to consider approval of (w) the Disclosure Statement, (x) the solicitation of votes on the Plan, (y) the forms of ballots, and (z) confirmation of the Plan (the "Combined Hearing"); and the Affidavit of Service of Rafael Stitt (ECF No. 62), having been

filed with the Court on February 17, 2017 (the "<u>Affidavit of Service</u>"); and the Debtors'

Memorandum of Law (A) in Support of Debtors' Motion for Entry of an Order (I) Approving the

Disclosure Statement, Solicitation of Votes on the Debtors' Second Amended Joint Prepackaged

Plan of Reorganization, and Forms of Ballots and (II) Confirming the Debtors' Second Amended

Prepackaged Joint Plan of Reorganization (ECF No. 139) (the "<u>Memorandum of Law</u>") having

been filed with the Court on March 16, 2017; and the Debtors having distributed the November

30 Disclosure Statement, including the Original Plan, and ballots substantially in the forms

attached to the Vote Certification (the "<u>Ballots</u>"; and collectively with the November Disclosure

Statement and Original Plan, the "<u>November Solicitation Packages</u>") and commenced on

November 30, 2016 a solicitation of votes pursuant thereto (the "<u>Solicitation</u>"); and the Debtors

having established 4:00 p.m. (Eastern Time) on January 2, 2017 as the original voting deadline in

the Solicitation (the "<u>Voting Deadline</u>"); and the Debtors having distributed the Disclosure

Statement Supplement on January 17, 2017 and having extended the Voting Deadline to 4:00

p.m. (Eastern Time) on February 4, 2017; and the Declaration of Barry W. Ridings in Support of

Confirmation of Debtors' Second Amended Prepackaged Joint Plan of Reorganization Pursuant

to Chapter 11 of the Bankruptcy Code (ECF No. 135) (the "<u>Ridings Declaration</u>") having been

filed with the Court on March 16, 2017; and the Declaration of Stephen Spitzer in Support of

Confirmation of Debtors' Second Amended Prepackaged Joint Plan of Reorganization Pursuant

to Chapter 11 of the Bankruptcy Code (ECF No. 137) (the "<u>Spitzer Declaration</u>") having been

filed with the Court on March 16, 2017; and the Declaration of Maria Cecilia Yad in Support of

Confirmation of Debtors' Second Amended Prepackaged Joint Plan of Reorganization Pursuant

to Chapter 11 of the Bankruptcy Code (ECF No. 136) (the "<u>Yad Declaration</u>") having been filed

with the Court on March 16, 2017; and the Declaration of Kevin Haggard in Support of

Confirmation of Debtors' Second Amended Prepackaged Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (ECF No. 138) (the "Haggard Declaration") having been filed with the Court on March 16, 2017; and the Court having considered the Plan, the Disclosure Statement, the Ballots, the Plan Supplement, the Vote Certification, the Second Vote Certification, the Affidavit of Service, the Scokin Declaration, the Ridings Declaration, the Yad Declaration, the Spitzer Declaration, the Haggard Declaration, the Memorandum of Law, the papers in support of approval of the Disclosure Statement, the Solicitation, the Ballots, and confirmation of the Plan, and all objections and responses thereto; and the Combined Hearing having been held before the Court on March 17, 2017, with the appearances of all interested parties having been noted in the record of the Combined Hearing; and the Court having considered all of the arguments of counsel and the evidence proffered, adduced, or presented at the Combined Hearing, and all of the proceedings had before this Court; and upon the Plan, the Disclosure Statement, the Ballots, the Plan Supplement, the Vote Certification, the Second Vote Certification, the Affidavit of Service, the Scokin Declaration, the Ridings Declaration, the Yad Declaration, the Spitzer Declaration, the Haggard Declaration, the Memorandum of Law, the papers filed in support of approval of the Disclosure Statement, the Solicitation, the Ballots, and confirmation of the Plan, and the record of the Combined Hearing; and the Court having found and determined that the Disclosure Statement contains sufficient and adequate information to comply with the disclosure requirements of the Bankruptcy Code, that the Disclosure Statement, the Solicitation, and the Ballots comply with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), the Procedural Guidelines for Prepackaged Chapter 11 Cases in the United States Bankruptcy Court for the

Southern District of New York, effective June 27, 2013 (as incorporated by Local Bankruptcy Rule 3018-2) (the "Guidelines") and any applicable nonbankruptcy law, rule, or regulation and should be approved, and that the Plan is in the best interests of the Plan Debtors, their estates and creditors, and all parties in interest and should be confirmed as reflected by this Court's rulings made in this Order and at the Combined Hearing; and after due deliberation and sufficient cause appearing therefor, the Court hereby FINDS, DETERMINES, AND CONCLUDES that:

A.    Findings and Conclusions.  The findings and conclusions set forth in this Order constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    Jurisdiction and Venue.    This Court has jurisdiction over these Reorganization Cases and to approve the Disclosure Statement, the Solicitation, and the Ballots and to confirm the Plan pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b).   Approval of the Disclosure Statement, the Solicitation, and the Ballots and confirmation of the Plan are core proceedings pursuant to 28 U.S.C. § 157(b), and this Court has jurisdiction to enter a final order with respect thereto.  Venue of these Reorganization Cases is properly in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Eligibility for Relief.  The Plan Debtors are proper debtors under section 109 of the Bankruptcy Code and proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

D.    <u>Chapter 11 Petitions</u>.  On February 6, 2017 (the "<u>Commencement Date</u>"),
each Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court
(the "<u>Reorganization Cases</u>").  The Debtors are authorized to continue to operate their businesses
and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of
the Bankruptcy Code.  No trustee or examiner has been appointed pursuant to section 1104 of the
Bankruptcy Code.  No statutory committee of unsecured creditors has been appointed pursuant to
section 1102 of the Bankruptcy Code.  Further, in accordance with an order of this Court, the
Reorganization Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

E.    <u>Judicial Notice</u>.  The Court takes judicial notice of the docket of the
Reorganization Cases maintained by the Clerk of the Court and/or its duly-appointed agent,
including, without limitation, all pleadings and other documents filed, all orders entered, and all
evidence and arguments made, proffered, adduced, or admitted at the hearings held before the
Court during the pendency of the Reorganization Cases.

F.    <u>Objections Overruled</u>.  All parties have had a full and fair opportunity to
litigate all issues raised by objections to the prepetition solicitation and tabulation of votes on the
Plan (the "<u>Solicitation Procedures</u>"), the Disclosure Statement, and confirmation of the Plan. All
unresolved objections, statements, informal objections, and reservations of rights, if any, related
to the Solicitation Procedures, notice of the Combined Hearing or the deadline for objecting
thereto, the Ballots, the Disclosure Statement, or the confirmation of the Plan, are OVERRULED
on the merits.

G.    <u>Burden of Proof.</u>  The Plan Debtors have the burden of proving the
elements of sections 1125 and 1129(a) and (b) of the Bankruptcy Code by a preponderance of the
evidence.  Each Plan Debtor has met such burden.

H.     Notice.  All parties required to receive notice of the Disclosure Statement, the Solicitation Procedures, the Plan and the transactions contemplated thereby, the Plan Supplement, and the Combined Hearing (including the deadline for filing and serving objections to approval of the Disclosure Statement, the Solicitation, and the Ballots and confirmation of the Plan) have received due, proper, timely, and adequate notice in accordance with applicable non-bankruptcy law, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Scheduling Order and have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

I.     Adequacy of Disclosure Statement.  The Disclosure Statement (a) contains sufficient information of a kind necessary to satisfy the disclosure requirements of any applicable nonbankruptcy law, rule, or regulation, including, without limitation, the Securities Act of 1933 (as amended, the "Securities Act") and the Securities Exchange Act of 1934 (as amended, the "Exchange Act"), (b) contains "adequate information" (as such term is defined in section 1125(a)(1) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code), and (c) is approved in all respects, including as providing adequate information under section 1125 of the Bankruptcy Code, and the Debtors are entitled to have solicited acceptances and rejections of the Plan.  The filing of the Disclosure Statement with the Clerk of the Court satisfied Bankruptcy Rule 3016(b).

J.     Ballots.  The Classes of Claims entitled to vote to accept or reject the Plan (the "Voting Classes") are as follows: Class 3 (2021 Note Claims), Class 4 (IFC-OFID Loan Claims, and Class 11 (Offshore Lender Parent Claims).  The Ballots the Plan Debtors used to solicit votes to accept or reject the Plan from the holders in the Voting Classes adequately addressed the particular needs of the Reorganization Cases and were appropriate for the holders

of Claims in the Voting Classes to use to vote to accept or reject the Plan. The Ballots comply with Bankruptcy Rule 3018(c), substantially conform to Official Form Number 314 and the Guidelines, and no other or further ballots were required.

K.      Prepetition Solicitation. The Solicitation complied with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection therewith, including, without limitation, the requirements of section 4(2) of the Securities Act and Regulation D promulgated thereunder, the antifraud provisions of the Securities Act, and the antifraud and antimanipulation provisions of the Exchange Act. The Plan Debtors have established that the Solicitation complies with any applicable securities laws. Before the Commencement Date, the Plan, the Disclosure Statement, and the Ballots were transmitted in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Guidelines, the Solicitation Procedures, and any applicable nonbankruptcy law, rule, or regulation. The Plan Debtors complied fully with Bankruptcy Rules 3017, 3018(b), and 3018(c) in the Solicitation. Before the Commencement Date, the Plan, the Disclosure Statement, and the Ballots were transmitted to all or substantially all the Plan Debtors' creditors of each class entitled to vote. After the Commencement Date, (a) notice of the Combined Hearing, including the deadlines for interposing Objections, in substantially the form attached to the Scheduling Order (the "Combined Hearing Notice") was provided to all or substantially all creditors and equity interests holders of the Plan Debtors and (b) the Plan, the Disclosure Statement, and the Combined Hearing Notice were transmitted to the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"). The transmittal of the foregoing materials complies with Bankruptcy Rule 3017(d). The procedures employed by the Plan Debtors for transmitting documents and information required by Bankruptcy Rule 3017(e) to beneficial

8

holders of the Plan Debtors' securities were adequate.  The Solicitation period prescribed for creditors to accept or reject the Plan was not unreasonably short and was reasonable and proper under the circumstances.

L.     Modifications or Alterations to the Plan.  To the extent the Plan has been modified, supplemented, or altered subsequent to solicitation, such modifications, supplements, and alterations constitute clarifications or technical changes, and do not materially adversely affect or change the treatment of any Claims or Interests.  Accordingly, pursuant to Bankruptcy Rule 3019, such modifications or alterations, if any, do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that creditors and equity security holders be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

M.     Voting.  The Plan has been accepted by more than the statutory majorities specified in section 1126(c) of the Bankruptcy Code.  Pursuant to section 1126(f) of the Bankruptcy Code, the Plan Debtors were not required to solicit votes from the holders of Claims or Equity Interests, as the case may be, in Class 1, Class 2, Class 5, Class 6, Class 8, and Class 10, as each such Class is unimpaired under the Plan and conclusively presumed to have accepted the Plan.  The Plan Debtors also were not required to solicit votes from holders of Claims or Equity Interests, as the case may be, in Class 7 and Class 9, as each such Class consented to treatment under the Plan.

N.     Solicitation in Good Faith.  As evidenced by the Vote Certification and the Second Vote Certification, Prime Clerk LLC (the "Solicitation Agent") has solicited and tabulated votes on the Plan fairly, in good faith, and in compliance with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125(a) and 1125(e) of the

Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any applicable nonbankruptcy law, rule, or regulation.

O.    <u>Parent-Included Plan</u>.  The Debtors solicited votes on the Parent-Included Plan and the Parent-Excluded Plan.  The Debtors are seeking confirmation of the Parent-Included Plan[3] as (i) the Common Terms Agreement was executed as of January 31, 2017 and (ii) on February 2, 2017 the Offshore Lenders voted their Class 11 Offshore Lender Parent Claims to accept the Plan.

P.    <u>The Plan Satisfies the Requirements of the Bankruptcy Code</u>.  The Plan complies with all applicable provisions of the Bankruptcy Code.

Q.    <u>Compliance with Bankruptcy Rule 3016</u>.  The Plan is dated and identifies the Plan Debtors as its proponents, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement complies with Bankruptcy Rule 3016(b).

R.    <u>Plan Supplement</u>.  The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents is good and proper, in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and no other or further notice is required.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan, the Restructuring Support Agreement, and the Offshore Business RSA, the Plan Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date.  Holders of Claims and Interests were provided due, adequate and sufficient notice of the Plan Supplement.

**STANDARDS FOR CONFIRMATION
UNDER SECTION 1129 OF THE BANKRUPTCY CODE**

---

3.    All references to the Plan in this Order refer to the Parent-Included Plan.

S.      The Plan Debtors, as proponents of the Plan, have met their burden of proving the elements of section 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for confirmation of the Plan. The evidentiary record of the Combined Hearing supports the findings of fact and conclusions of law set forth in the following paragraphs.

T.      **Plan's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))**. The Plan complies with each applicable provision of the Bankruptcy Code.  Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Equity Interests (other than Administrative Claims, Fee Claims, Priority Tax Claims and statutory fees, which are addressed in Article II of the Plan and which are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code) into eleven (11) Classes, based on differences in the legal nature or priority of such Claims and Equity Interests. In particular, the Plan complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code as follows:

1.      Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).  Article III of the Plan provides for the separate classification of Claims and Equity Interests into eleven (11) Classes.  Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Equity Interests.  The classifications reflect no improper purpose and do not unfairly discriminate between, or among, holders of Claims and Equity Interests, respectively.  Each Class of Claims and Equity Interests contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests within that Class. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

2.      Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). Article III of the Plan specifies that Claims in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 5 (General Unsecured Claims), Class 6 (River Business Intercompany Claims), Class 8 (Equity Interests in River Business Debtors), and Class 10 (Equity Interests in Parent) are unimpaired under the Plan within the meaning of section 1123 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code. Additionally, Article II of the Plan specifies that Allowed Administrative Claims, Fee Claims, Priority Tax Claims and U.S. Trustee fees will be paid in full in accordance with the terms of the Plan, although these Claims are not classified under the Plan.

3.      Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Article III of the Plan designates Claims in Class 3 (2021 Note Claims), Class 4 (IFC-OFID Claims), Class 9 (Other Intercompany Claims), and Class 11 (Offshore Lender Parent Claims) and Equity Interests in Class 7 (Equity Interests in River Business Holding Company Debtors) as impaired within the meaning of section 1124 of the Bankruptcy Code and specifies the treatment of the Claims and Equity Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

4.      No Discrimination (11 U.S.C. § 1123(a)(4)). In accordance with section 1123(a)(4) of the Bankruptcy Code, the Plan provides the same treatment for each Claim or Equity Interest within a particular Class unless the holder of such a Claim or Equity Interest has agreed to less favorable treatment.

5.      Implementation of the Plan (11 U.S.C. § 1123(a)(5)). In accordance with section 1123(a)(5) of the Bankruptcy Code, the Plan, including the Plan Supplement, provides detailed, adequate, and proper means for its implementation.

6.      Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6)). In accordance with section 1123(a)(6) of the Bankruptcy Code, the Restated Charters contain provisions prohibiting the issuance of non-voting equity securities and providing for the appropriate distribution of voting power among all classes of equity securities authorized for issuance under the Plan.

7.      Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)). In accordance with section 1123(a)(7) of the Bankruptcy Code, the Plan contains any provisions that are consistent with the interests of creditors and equity interest holders and with public policy with respect to the manner of selection of officers and directors under the Plan and any successors to such officers and directors. The initial directors and officers of Reorganized Debtors were disclosed prior to the Combined Hearing as part of the Plan Supplement.

8.      Impairment/Unimpairment of Classes of Claims and Equity Interests (11 U.S.C. § 1123(b)(1)). In accordance with section 1123(b)(1) of the Bankruptcy Code, Article III of the Plan impairs or leaves Unimpaired, as the case may be, each Class of Claims and Equity Interests.

9.      Assumption and Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)). In accordance with section 1123(b)(2) of the Bankruptcy Code, Article VIII of the Plan provides for the assumption, assumption and assignment, or rejection of the Executory Contracts and Unexpired Leases of the Plan Debtors that have not been previously assumed, assumed and assigned, or rejected pursuant to section 365 of the Bankruptcy Code.

10.    <u>Settlement and Preservation of Claims and Causes of Action (11 U.S.C. § 1123(b)(3))</u>. In accordance with section 1123(b)(3) of the Bankruptcy Code and pursuant to Bankruptcy Rule 9019, the Plan provides for the good faith compromise and settlement of all Claims and controversies resolved under the Plan.  Article V.E of the Plan further provides, in accordance with section 1123(b)(3) of the Bankruptcy Code, that the Reorganized Debtors will, except as expressly provided in the Plan, retain all Causes of Action, including those Causes of Action listed as retained Causes of Action in the Plan Supplement, and have the exclusive right, authority and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Cause of Action and to decline to do any of the foregoing without further notice to or action, order or approval of the Court.

11.    <u>Modification of Rights (11 U.S.C. § 1123(b)(5))</u>. In accordance with section 1123(b)(5) of the Bankruptcy Code, Article III of the Plan modifies or leaves unaffected, as the case may be, the rights of certain holders of Claims and Equity Interests in Classes 1 through 11.

12.    <u>Additional Plan Provisions (11 U.S.C. § 1123(b)(6))</u>. In accordance with section 1123(b)(6) of the Bankruptcy Code, the Plan includes additional appropriate provisions that are not inconsistent with applicable provisions of the Bankruptcy Code.

13.    <u>Plan Debtors Are Not Individuals (11 U.S.C. § 1123(c))</u>. The Plan Debtors are not individuals and section 1123(c) of the Bankruptcy Code is inapplicable to these Reorganization Cases.

14.    <u>Cure of Defaults (11 U.S.C. § 1123(d))</u>. In accordance with section 1123(d) of the Bankruptcy Code, Article VIII of the Plan provides for the satisfaction of Cure Claims associated with each Executory Contract or Unexpired Lease to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code.  All Cure Claims will be determined in accordance with the underlying agreements and applicable law.

U.    <u>Plan Proponent Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Plan Debtors, as plan proponents, have complied with all applicable provisions of the Bankruptcy Code.  Specifically: (i) each of the Plan Debtors is an eligible debtor under section 109 of the Bankruptcy Code, (ii) the Plan Debtors have complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126(b), the Bankruptcy Rules, the Local Rules, the Guidelines, the Scheduling Order, applicable non-bankruptcy law, and all other applicable laws, rules, and regulations in transmitting the

Solicitation Packages, the Disclosure Statement Supplement, the Plan Supplement and related documents and notices and in soliciting and tabulating the votes on the Plan, and (iii) the Plan Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court.

V.    <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Plan (including the Investment Agreement, the IFC-OFID Loan Purchase Agreement, the Offshore Administrative Services Agreement, and all documents necessary to effectuate the Plan) has been proposed in good faith and not by any means forbidden by law.  The Plan is based upon the Restructuring Support Agreement and the Offshore Business RSA and the Court approved the assumption of the Restructuring Support Agreement and the Offshore Business RSA as being within the Debtors' reasonable business judgment on March 7, 2017 (ECF Nos. 99, 101).  To implement the terms of the Restructuring Support Agreement, Offshore Business RSA, and the Plan, the Debtors filed the Reorganization Cases with an honest belief that they were in need of reorganization and that the reorganization contemplated in the Restructuring Support Agreement, the Offshore Business RSA, and the Plan were the best restructuring alternatives available to the Debtors following a comprehensive and extensive marketing process overseen by the Debtors' financial advisors, a Special Committee of independent directors, and the legal and financial advisors hired by the Debtors' secured lenders.  The Plan was negotiated and proposed with the intention of accomplishing a successful reorganization.  The pre-Commencement Date sale of the Ocean Business was in accordance with the terms of the Restructuring Support Agreement, negotiated, and closed in good faith following an extensive marketing process, as described in the Haggard Declaration and the Ridings Declaration.  The Debtors' good faith is evident from the facts and records of the Reorganization Cases, the Disclosure Statement, the Plan, the Scokin

Declaration, the Ridings Declaration, the Haggard Declaration, the record of the Combined Hearing, and the other proceedings in these Reorganization Cases. The Plan fairly achieves a result consistent with the objectives and purposes of the Bankruptcy Code, including the provisions of the Bankruptcy Code favoring consensual reorganization such as "prepackaged" chapter 11 cases and is consistent with other prepackaged cases that have been filed before this Court. In so finding, the Court has considered the totality of the circumstances in these Reorganization Cases. The Plan is the result of extensive good faith, arm's-length negotiations between the Debtors and certain of their principal constituencies and achieves the goal of consensual reorganization embodied by the Bankruptcy Code. The Debtors and each of their respective officers, directors, employees, advisors and professionals (i) acted in good faith in negotiating, formulating, and proposing, where applicable, the Plan and the agreements, compromises, settlements, transactions, and transfers contemplated thereby, and (ii) will be acting in good faith in proceeding to (a) consummate the Plan and the agreements, compromises, settlements, transactions, transfers, and documentation contemplated by the Plan, including, but not limited to, the Plan Supplement documents, and (b) take any actions authorized and directed or contemplated by this Order. Thus, the Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

   W. <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with the Reorganization Cases, or in connection with the Plan and incident to the Reorganization Cases, including but not limited to Accrued Professional Compensation, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

X.     <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>.  The identities,

qualifications, and affiliations of the individuals proposed to serve as the directors and officers of

the Reorganized Debtors as of the Effective Date have been fully disclosed, and the appointment

to, or continuance in, such offices is consistent with the interests of creditors and equity interest

holders and with public policy.  The identity of any insider proposed to be employed by the

Reorganized Debtors as of the Effective Date and the nature of such insider's compensation have

been fully disclosed.

Y.     <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.  Section 1129(a)(6) of the

Bankruptcy Code is not applicable to these Reorganization Cases.  The Plan does not provide for

any changes in rates that require regulatory approval of any governmental agency.

Z.     <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>. The liquidation

analysis set forth in Exhibit E to the Disclosure Statement and other evidence proffered or

adduced at or prior to, or in declarations filed in connection with, the Combined Hearing (i) are

reasonable, persuasive, accurate and credible, (ii) use reasonable and appropriate methodologies

and assumptions, (iii) have not been controverted by any other evidence, and (iv) establish that

each holder of an Allowed Claim or Equity Interest in an Impaired Class either (a) has accepted

the Plan or (b) will receive or retain under the Plan, on account of such Claim or Equity Interest,

property of a value, as of the Effective Date of the Plan, that is not less than the amount that it

would have received if the Plan Debtors were liquidated under Chapter 7 of the Bankruptcy

Code on such date.

AA.    <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>.  Classes 1, 2, 5,

6, 8, and 10 are unimpaired by the Plan and are conclusively presumed to have accepted the Plan

under section 1126(f) of the Bankruptcy Code.  Classes 7 and 9 are impaired by the Plan, but as

proponents of the Plan, have consented to treatment under the Plan and are deemed to consent to the Plan.  As set forth in the Vote Certification and the Second Vote Certification, the Plan has been accepted in writing by the holders of more than two-thirds in amount and one-half in number of holders in Classes 3, 4, and 11.

BB.    Treatment of Administrative Claims, Priority Tax Claims and Other Priority Claims (11 U.S.C. § 1129(a)). The Plan provides treatment for Administrative Claims, Priority Tax Claims, and Other Priority Claims that is consistent with the requirements of section 1129(a)(9) of the Bankruptcy Code.

CC.    Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)). As evidenced by the Vote Certification and the Second Vote Certification, the Plan has been accepted by three (3) classes of Impaired Claims that are entitled to vote on the Plan, determined without including any acceptance of the Plan by any "insider" (as that term is defined in section 101(31) of the Bankruptcy Code).

DD.    Feasibility (11 U.S.C. § 1129(a)(11)). The Plan is feasible, within the meaning of section 1129(a)(11) of the Bankruptcy Code.  The Plan Debtors' projections of the capitalization and financial information of the Reorganized Debtors as of the Effective Date are reasonable and made in good faith.  The evidence provided in support of the Plan or adduced by the Plan Debtors at, before, or in declarations filed in connection with, the Combined Hearing: (a) is reasonable, persuasive, credible and accurate as of the dates such analysis or evidence was prepared, presented or proffered; (b) uses reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that each Reorganized Debtor will be solvent following the Effective Date, and that Confirmation of the Plan is not likely to be followed by the liquidation or further financial reorganization of the

Reorganized Debtors or any successor to the Reorganized Debtors under the Plan except as provided in the Plan; and (e) establishes that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan. The pre-Commencement Date sale of the Ocean Business provides funding for the Plan and eliminates the risk of further Ocean Business operations.  The Plan Debtors have demonstrated a reasonable assurance of the Plan's prospects for success.

EE.    Payment of Certain Fees (11 U.S.C. § 1129(a)(12)). The Plan provides that fees payable pursuant to 28 U.S.C. § 1930 and due and owing to the U.S. Trustee at the time of the Combined Hearing will be paid by the Plan Debtors on the Effective Date.  After the Effective Date, the Reorganized Debtors will pay the quarterly fees due to the U.S. Trustee for the Reorganized Debtors until the entry of a final decree in the Reorganization Cases or until the Reorganization Cases are converted or dismissed.

FF.    Non-Applicability of Certain Sections (11 U.S.C. §§ 1129(a)(13), (14), (15) and (16)). Sections 1129(a)(13), (14), (15), and (16) of the Bankruptcy Code do not apply to the Reorganization Cases as the Plan Debtors owe no retiree benefits or domestic support obligations, are not individuals, and are not nonprofit corporations.

GG.    No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).  All applicable requirements of section 1129(b) of the Bankruptcy Code have been satisfied.

HH.    Only One Plan (11 U.S.C. § 1129(c)).  The Plan is the Parent-Included Plan and the only chapter 11 plan filed in the Reorganized Cases and, accordingly, section 1129(c) of the Bankruptcy Code has been satisfied.

II.    Principal Purpose of the Plan (11 U.S.C. § 1129(d)). No party in interest has requested that the Court deny Confirmation of the Plan on the grounds that the principal

18

purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of
the Securities Act, and the principal purpose of the Plan is not such avoidance. Accordingly, the
Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code**.**

JJ.     Small Business Case (11 U.S.C. § 1129(e)).   None of these Reorganization
Cases is a small business case within the meaning of the Bankruptcy Code. Accordingly, section
1129(e) of the Bankruptcy Code is inapplicable to these Reorganization Cases.

KK.     Good Faith Solicitation (11 U.S.C. § 1125(e)).   Based on the record before
the Court in these Reorganization Cases, including evidence presented at the Combined Hearing,
the Debtors, the Reorganized Debtors, their respective successors, predecessors, control persons,
members, officers, directors, employees and agents, and their respective attorneys, financial
advisors, investment bankers, accountants, and other professionals retained by such persons (in
each case in their capacities as such), have acted in "good faith" within the meaning of section
1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy
Code, the Bankruptcy Rules, the Local Rules, the Guidelines, and any applicable non-bankruptcy
law, rule, or regulation in connection with all of their respective activities relating to the Plan,
including the execution, delivery and performance of the Restructuring Support Agreement and
the Offshore Business RSA and solicitation of acceptances of the Plan, and are entitled to the
protections afforded by section 1125(e) of the Bankruptcy Code.

LL.     Valuation. The (a) valuation analysis contained in the Disclosure
Statement is based upon the informed judgment of Miller Buckfire and the Debtors, and (b) the
estimated post-emergence enterprise value of the Reorganized Debtors is reasonable and
credible.   All parties in interest have been given the opportunity to challenge the valuation
analysis.   The valuation analysis (x) is reasonable, persuasive, credible and accurate as of the

date such analysis or evidence was prepared, presented, or proffered, and (y) uses reasonable and appropriate methodologies and assumptions.

MM.    <u>Satisfaction of Confirmation Requirements.</u>  Based upon the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Combined Hearing, the Plan and the Plan Debtors as proponents of the Plan satisfy the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

NN.    <u>Retention of Jurisdiction</u>.  Subject to the terms of Article VII of the Plan, and except as otherwise provided under the terms of any documents, agreements, or instruments included in the Plan Supplement, including, without limitation, the Offshore Business RSA and the Offshore Common Terms Agreement, or any documents, agreements or instruments executed or delivered in connection with any such documents, agreements or instruments included in the Plan Supplement, upon the Effective Date, the Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Reorganization Cases, including the matters set forth in Article VII of the Plan and section 1142 of the Bankruptcy Code.

OO.    <u>Good Faith</u>.  All documents necessary to consummate and implement the Plan and the transactions contemplated thereby, including, without limitation, the Plan Documents, have been negotiated in good faith and at arm's length and, upon execution thereof shall be valid, binding, and enforceable agreements and shall not be in conflict with any federal or state law.  The Debtors, the Reorganized Debtors, and each of their respective officers, directors, principals, members, partners, employees, agents, managers, representatives, advisors, attorneys, accountants, and professionals will be acting in good faith if they proceed to consummate and implement the Plan and the transactions contemplated thereby and take the actions authorized and directed by this Order.

PP.    <u>Investment Agreement</u>.    The Investment Agreement is an essential element of the Plan, was proposed in good faith, is critical to the success and feasibility of the Plan, and is necessary and appropriate for consummation and implementation of the Plan and the transactions contemplated thereby and to the operation of the Reorganized Debtors.    The Investment Agreement constitutes reasonably equivalent value and fair and valuable consideration and is in the best interests of the Plan Debtors, their Estates and creditors, the Reorganized Debtors, and all other parties in interest.    Sparrow, Southern Cross, and its agents, affiliates, current and former officers, directors, employees, managers, attorneys, financial advisors, accountants, investment bankers, consultants, management companies or other professionals or representatives participated in good faith, arm's length negotiations with respect to the Investment Agreement, and all other agreements, instruments, and ancillary documents to be executed and/or delivered in connection with the foregoing.    The Plan Debtors exercised reasonable business judgment in determining to enter into the Investment Agreement and have provided sufficient and adequate notice thereof.    The transactions contemplated by the Investment Agreement, including the consideration to be paid by Sparrow, are the result of an extensive and comprehensive marketing process undertaken by the Debtors' financial advisors, and overseen by a Special Committee of independent directors and the advisors for Ultrapetrol's secured creditors.    The Investment Agreement (when and to the extent effective pursuant to its terms) will be and is hereby deemed to be, a valid, binding, enforceable and authorized obligation of the Reorganized Debtors in accordance with its terms, and shall not be, and shall not be deemed to be, in conflict with any applicable laws, *provided*, *however*, that in the event of any inconsistency between the terms of the Investment Agreement, on the one hand, and the Offshore Business RSA, the Offshore Common Terms Agreement, the Offshore Loan

Agreements or any document, agreement or instrument executed and/or delivered in connection

with the Offshore Business RSA, the Offshore Common Terms Agreement or the Offshore Loan

Agreements, on the other hand, that affects the rights of the Offshore Lenders or the Offshore

Agents with respect to the Offshore Business, the Offshore Business Holding Company, any

other Offshore Business Entity, or any property thereof, including with respect to the release of

any guaranty or other claims that the Offshore Lenders or the Offshore Agents hold against the

Offshore Business Holding Company, any other Offshore Business Entity, or any property

thereof or the transfer of the Offshore Business Holding Company free and clear of claims,

interests, liens and encumbrances held by or for the benefit of, as the case may be, the Offshore

Lenders or the Offshore Agents pursuant to the terms of the Offshore Business RSA, the

Offshore Common Terms Agreement or the Offshore Loan Agreements or any document,

agreement or instrument executed and/or delivered in connection therewith shall control;

*provided further*, that each reference in this Paragraph PP of this Order to the Offshore Loan

Agreements or any document, agreement or instrument executed and/or delivered pursuant to the

terms of the Offshore Loan Agreements shall refer, following the occurrence of the Effective

Date (as defined in the Offshore Common Terms Agreement), to the Offshore Loan Agreements

or any documents, agreements or instruments executed and/or delivered pursuant to the terms of

the Offshore Common Terms Agreement, as the case may be, as amended pursuant to the terms

of the Offshore Common Terms Agreement or any document, agreement or instrument executed

and/or delivered pursuant to the terms of the Offshore Common Terms Agreement.  No third-

party consents, authorizations, or approvals are required with respect to the Investment

Agreement and the Investment Agreement does not contravene the Reorganized Debtors'

corporate governance documents or constitute any violation of, default under or otherwise

contravene any instrument, contract, agreement or other document to which the Reorganized Debtors are a party. The execution and delivery of the Investment Agreement by the applicable Reorganized Debtor and performance of any obligations thereunder will not result in a violation or default under any instrument, contract, agreement, or other document to which it is a party, including those instruments, contracts, agreements, or other documents addressed, modified, created, or reinstated under the Plan. Each of Sparrow River Investments Ltd., Sparrow Offshore Investments Ltd., and Sparrow Offshore Capital Ltd. is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, as incorporated by section 1123(a) of the Bankruptcy Code, and is therefore entitled to the protections afforded to good faith purchasers to the fullest extent permitted under the Bankruptcy Code. The purchase price to be provided by each of Sparrow River Investments Ltd. and Sparrow Offshore Investments Ltd. pursuant to the Investment Agreement was not controlled by any agreement between Sparrow River Investments Ltd., Sparrow Offshore Investments Ltd., Sparrow Offshore Capital Ltd. and any potential bidders and was not reduced or suppressed in any manner by any agreement or arrangement involving Sparrow River Investments Ltd., Sparrow Offshore Investments Ltd., Sparrow Offshore Capital Ltd., and any creditor.

QQ.    <u>IFC-OFID Loan Purchase Agreement</u>.    The IFC-OFID Loan Purchase Agreement is an essential element of the Plan, was proposed in good faith, is critical to the success and feasibility of the Plan and is necessary and appropriate for consummation and implementation of the Plan and the transactions contemplated thereby and to the operation of the Reorganized Debtors. The IFC-OFID Loan Purchase Agreement constitutes reasonably equivalent value and fair and valuable consideration and is in the best interests of the Plan Debtors, their Estates and creditors, the Reorganized Debtors, and all other parties in interest.

IFC, OFID, UABL Limited, and Thurston Shipping Inc., and their respective agents, affiliates, current and former officers, directors, employees, managers, attorneys, financial advisors, accountants, investment bankers, consultants, management companies or other professionals or representatives participated in good faith, arm's length negotiations with respect to the IFC-OFID Loan Purchase Agreement, and all other agreements, instruments, and ancillary documents to be executed and/or delivered in connection with the foregoing.  The Plan Debtors exercised reasonable business judgment in determining to enter into the IFC-OFID Loan Purchase Agreement and have provided sufficient and adequate notice thereof.  The IFC-OFID Loan Purchase Agreement (when and to the extent entered into) will be and is hereby deemed to be, a valid, binding, enforceable and authorized obligation of the Reorganized Debtors in accordance with its terms, and shall not be, and shall not be deemed to be, in conflict with any applicable laws. No third-party consents, authorizations, or approvals are required with respect to the IFC-OFID Loan Purchase Agreement and the IFC-OFID Loan Purchase Agreement does not contravene the Reorganized Debtors' corporate governance documents or constitute any violation of, default under or otherwise contravene any instrument, contract, agreement or other document to which the Reorganized Debtors are a party.  The execution and delivery of the IFC-OFID Loan Purchase Agreement by the applicable Reorganized Debtor and performance of any obligations thereunder will not result in a violation or default under any instrument, contract, agreement or other document to which it is a party, including those instruments, contracts, agreements or other documents addressed, modified, created or reinstated under the Plan.

RR.    Offshore Administrative Services Agreement.    The Offshore Administrative Services Agreement is an essential element of the Plan, was proposed in good faith, is critical to the success and feasibility of the Plan and is necessary and appropriate for

consummation and implementation of the Plan and the transactions contemplated thereby and to the operation of the Reorganized Debtors. The Offshore Administrative Services Agreement constitutes reasonably equivalent value and fair and valuable consideration and is in the best interests of the Plan Debtors, their Estates and creditors, the Reorganized Debtors, and all other parties in interest. The parties to the Offshore Administrative Services Agreement and their respective agents, affiliates, current and former officers, directors, employees, managers, attorneys, financial advisors, accountants, investment bankers, consultants, management companies or other professionals or representatives participated in good faith, arm's length negotiations with respect to the Offshore Administrative Services Agreement, and all other agreements, instruments, and ancillary documents to be executed and/or delivered in connection with the foregoing. The Plan Debtors exercised reasonable business judgment in determining to enter into the Offshore Administrative Services Agreement and have provided sufficient and adequate notice thereof. The Offshore Administrative Services Agreement (when and to the extent entered into) will be and is hereby deemed to be, a valid, binding, enforceable and authorized obligation of the Reorganized Debtors in accordance with its terms, and shall not be, and shall not be deemed to be, in conflict with any applicable laws. No third-party consents, authorizations, or approvals are required with respect to the Offshore Administrative Services Agreement and the Offshore Administrative Services Agreement does not contravene the Reorganized Debtors' corporate governance documents or constitute any violation of, default under or otherwise contravene any instrument, contract, agreement or other document to which the Reorganized Debtors are a party. The execution and delivery of the Offshore Administrative Services Agreement by the applicable Reorganized Debtor and performance of any obligations thereunder will not result in a violation or default under any instrument, contract, agreement or

other document to which it is a party, including those instruments, contracts, agreements or other documents addressed, modified, created or reinstated under the Plan.

        SS.   <u>Implementation of the Plan</u>.  All documents and agreements necessary to implement the Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents and agreements are essential elements of the Plan and consummation of each such agreement is in the best interests of the Plan Debtors, the Estates, and holders of Claims and Equity Interests. The Plan Debtors have exercised reasonable business judgment in determining to enter into the contemplated agreements, and the agreements have been negotiated in good faith, at arm's-length, are fair and reasonable, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

        TT.   <u>Conditions to the Confirmation of the Plan</u>.  Each of the conditions precedent to entry of this Order has been satisfied in accordance with Article V.A of the Plan or properly waived in accordance with Article V.B of the Plan.

        UU.   <u>Executory Contracts and Unexpired Leases</u>.  The Plan Debtors have exercised reasonable business judgment in determining whether to assume or reject each of the Plan Debtors' executory contracts and unexpired leases as set forth in Article VIII of the Plan.

        VV.   <u>Releases, Injunction and Exculpation</u>.  The releases, injunction, discharge, and exculpation provisions set forth in Section V.H of the Plan (collectively, the "<u>Releases</u>") constitute good-faith compromises and settlements of the matters covered thereby.  Such compromises and settlements are made in exchange for material consideration and (i) are in the best interests of the Plan Debtors, their Estates and holders of Claims and Equity Interests, (ii) are fair, equitable, and reasonable, and (iii) are integral elements of the restructuring and

resolution of the Reorganization Cases in accordance with the Plan.  The failure to approve the Releases would seriously impair the Plan Debtors' ability to confirm the Plan.  Each provision of the Releases (i) is within the jurisdiction of the Court under 28 U.S.C. § 1334(b); (ii) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) is an integral element of the settlements and transactions incorporated into the Plan; (iv) confers a material benefit on, and is in the best interests of, the Plan Debtors, their estates, and holders of Claims and Equity Interests; (v) is important to the overall objectives of the Plan to finally resolve all Claims and Equity Interests among or against the parties in interest in the Reorganization Cases with respect to the Plan Debtors' reorganization; and (vi) is consistent with sections 105, 1123, and 1129 of the Bankruptcy Code and all other applicable law.  Each non-Debtor Released Party that will benefit from the Releases either shares an identity of interest with the Plan Debtors, was instrumental to the successful prosecution of the Reorganization Cases, and/or provided a substantial contribution to the Plan Debtors, which value provided a significant benefit to the Plan Debtors' Estates, and which will allow for distributions that would not otherwise be available to the Plan Debtors' creditors but for the contributions made by such non-Debtor parties.

WW.   Releases of non-Debtor parties pursuant to Article V.H(b) of the Plan are subject to the terms of the Plan.  Such Releases are binding upon: (a) the 2021 Notes Indenture Trustee; (b) the Offshore Agents, (c) holders of Impaired Claims who (x) voted to accept the Plan or (y) voted to reject the Plan and affirmatively elected to grant the releases provided in the Plan by checking the opt-in box on the Ballot; (d) IFC, (e) OFID; (f) Sparrow; (g) Southern Cross; (h) New Holdco; (i) to the fullest extent permissible under applicable law holders of Unimpaired Claims and Equity Interests, and (j) with respect to each of the foregoing applicable

Entities in clauses (a) through (i), such Entity's predecessors, successors and assigns, affiliates, subsidiaries, funds, portfolio companies, management companies (but excluding any predecessors, portfolio companies, or management companies of any 2021 Noteholder), and each of their respective current and former shareholders, directors, officers, members, employees, partners, managers, independent contractors, agents, representatives, principals, consultants, financial advisors, attorneys, accountants, investment bankers, and other professional advisors (each solely in their capacity as such).

XX.    The Ballots explicitly stated the following: (a) those who submit a Ballot voting to reject the Plan and choose to opt in to the Releases will be deemed to have consented to the Releases and (b) those that vote to accept the Plan are automatically deemed to accept the Releases.  Those holders of Claims submitting a Ballot voting to accept the Plan and those who voted to reject the Plan and chose to opt in to the Releases, were given due and adequate notice that they would be consenting to the Plan Releases by acting in such a manner.  The Releases were also adequately disclosed and explained on the Ballots, in the Disclosure Statement and Plan, and in the Combined Hearing Notice. The Plan, including the Releases, was also nearly unanimously accepted by those entitled to vote on the Plan.  Accordingly, in light of all of the circumstances, the Releases satisfy the applicable standards contained in *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136 (2d Cir. 2005), are fair to the releasing parties, and are otherwise appropriate under *In re Johns-Manville Corp.*, 600 F.3d 135 (2d Cir. 2010).

**For all of the foregoing reasons, and after due deliberation, the Court**

**FINDS, ADJUDGES, AND DECREES THAT:**

1.    **Approval of Disclosure Statement and Solicitation**.  In accordance with sections 1125 and 1126(b) of the Bankruptcy Code and Fed. R. Bankr. P. 3017 and 3018, the

Disclosure Statement and the Debtors' Solicitation of votes to accept or reject the Plan are approved in all respects. To the extent that the Solicitation is deemed to constitute an offer of new securities, the Plan Debtors are exempt from the registration requirements of the Securities Act (and of any equivalent state securities or "blue sky" laws) with respect to such Solicitation under section 4(2) of the Securities Act and Regulation D promulgated thereunder.

   2. **Ballots**. The Ballots are approved in all respects.

   3. **Waiver of 341 Meeting**. The requirement under section 341(a) of the Bankruptcy Code to convene a meeting of creditors is waived.

   4. **Confirmation of the Plan**. The Plan (including the Plan Supplement) and each of its provisions (whether or not specifically approved herein) is and are CONFIRMED in each and every respect, pursuant to section 1129 of the Bankruptcy Code, and the terms of the Plan and the Plan Supplement are incorporated by reference into, and are an integral part of, this Order. A copy of the confirmed Plan is attached as Exhibit A to this Order. The failure to specifically include or refer to any particular article, section, or provision of the Plan, Plan Supplement, or any related document in this Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Court that this Order confirms the Plan and any related documents in their entirety.

   5. **Effective Date**. The Effective Date of the Plan shall occur on the date determined by the Plan Debtors when the conditions set forth in Article IX.A of the Plan have been satisfied or, if applicable, have been waived in accordance with Article IX.B of the Plan.

   6. **Waiver of Stay**. Pursuant to Fed. R. Bankr. P. 3020(e), the fourteen-day stay of this Order imposed thereby is waived. The Plan Debtors are authorized to consummate and implement the Plan and the transactions contemplated thereby immediately upon,

concurrently with, or as soon as practicable following satisfaction of the conditions set forth in Article IX.A of the Plan.

7.      **Objections to the Plan Are Overruled**.  All Objections that have not been withdrawn prior to the entry of this Order or are not cured by the relief granted in this Order are overruled in all respects for the reasons set forth by the Court in the record of the Combined Hearing.  All withdrawn Objections, if any, are deemed withdrawn with prejudice.

8.      **No Action Required**. Under the provisions of applicable non-bankruptcy law and section 1142(b) of the Bankruptcy Code, no action of the respective directors, stockholders, managers, or members of the Plan Debtors is required to authorize the Plan Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, instrument, or other document (including any documents that are part of the Plan Supplement) to be executed, delivered, adopted, or amended in connection with the implementation of the Plan.

9.      **Order Binding on All Parties**.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Plan Debtors, the Reorganized Debtors, and any and all holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Plan), all Persons that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Person acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with any Debtor, and the respective heirs, executors, administrators, trustees, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, guardians, successors, or assigns, if any, of any of the foregoing.  On the

Effective Date, all settlements, compromises, releases (including, without limitation, the Releases), waivers, discharges, exculpations, and injunctions set forth in the Plan shall be effective and binding on all Persons.

10. **Other Essential Documents and Agreements**. The documents contained in the Plan and Plan Supplement, and any amendments, modifications, and supplements thereto made in accordance with the Plan and such documents' terms, this Order, the Restructuring Support Agreement, or the Offshore Business RSA, and all documents and agreements introduced into evidence by the Plan Debtors at the Combined Hearing (including all exhibits and attachments thereto and all documents referred to therein), and the execution, delivery, and performance thereof by the Plan Debtors and the Reorganized Debtors, as applicable, are authorized and approved when such documents and agreements are finalized, executed, and delivered. Without further order or authorization of the Court, the Plan Debtors and the Reorganized Debtors are authorized and empowered to make all modifications to documents included as part of the Plan or Plan Supplement, and any other documents that are necessary or appropriate to consummate and implement the Plan and the transactions contemplated thereby, that do not materially modify the terms of such documents and are consistent with the Plan, this Order, the Restructuring Support Agreement, or the Offshore Business RSA. The executed versions of the documents included in the Plan and the Plan Supplement, including, without limitation, the Investment Agreement, the IFC-OFID Loan Purchase Agreement, the Offshore Common Terms Agreement, the Offshore Business RSA or any document, instrument, or agreement executed or delivered in connection therewith, and the Offshore Administrative Services Agreement, shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms; *provided*, *however*, that in

the event of any inconsistency between the terms of the Investment Agreement, on the one hand, and the Offshore Business RSA, the Offshore Common Terms Agreement or the Offshore Loan Agreements, or any document, agreement or instrument executed and/or delivered in connection with the Offshore Business RSA, Offshore Common Terms Agreement or the Offshore Loan Agreements, on the other hand, that affects the rights of the Offshore Lenders or the Offshore Agents with respect to the Offshore Business, the Offshore Business Holding Company, any other Offshore Business Entity, or any property thereof, including with respect to the release of any guaranty or other claims that the Offshore Lenders or the Offshore Agents hold against the Offshore Business Holding Company or any other Offshore Business Entity or the transfer of the Offshore Business Holding Company or any property thereof free and clear of claims, interests, liens and encumbrances held by or for the benefit of, as the case may be, the Offshore Lenders or the Offshore Agents pursuant to the terms of the Offshore Business RSA, Offshore Common Terms Agreement, the Offshore Loan Agreements or any document, agreement or instrument executed and/or delivered in connection therewith shall control; *provided further*, that each reference in this Paragraph 10 of this Order to the Offshore Loan Agreements or any document, agreement or instrument executed and/or delivered pursuant to the terms of the Offshore Loan Agreements shall refer, after the occurrence of the Effective Date (as defined in the Offshore Common Terms Agreement), to the Offshore Loan Agreements or any documents, agreements or instruments executed and/or delivered pursuant to the terms of the Offshore Loan Agreements as amended pursuant to the terms of the Offshore Common Terms Agreement or any document, agreement or instrument executed and/or delivered in connection with the Offshore Common Terms Agreement.    No obligation, payment, or transfer under this Order or under any of the documents included in the Plan and Plan Supplement, including, without limitation, the

Investment Agreement, the IFC-OFID Loan Purchase Agreement, the Offshore Business RSA, the Offshore Common Terms Agreement or any document, instrument or agreement executed or delivered in connection therewith, and the Offshore Administrative Services Agreement, shall be subject to avoidance or recovery under the Bankruptcy Code or any applicable nonbankruptcy law, or subjected to any defense, reduction, setoff, recoupment, or counterclaim.

11.    **Investment Agreement**.  The Debtors are authorized to take all actions necessary to comply with and complete the transactions contemplated by the Investment Agreement including without limitation that (i) (x) Parent may waive, eliminate, and discharge, and/or cause all its direct and indirect subsidiaries (other than River Business Entities) to waive, eliminate, and discharge, any and all claims against River Business Entities and (y) River Business Entities, subject to the occurrence of the Effective Date, may waive, eliminate, and discharge any and all claims against Parent and all its direct and indirect subsidiaries other than River Business Entities; and (ii) (x) Parent may waive, eliminate, and discharge and/or cause all its direct and indirect subsidiaries (other than Offshore Business Entities) to waive, eliminate, and discharge any and all claims against Offshore Business Entities and (y) Offshore Business Entities may waive, eliminate, and discharge any and all claims against Parent and all its direct and indirect subsidiaries other than Offshore Business Entities

12.    **Sale Transactions**.    Pursuant to sections 363, 365, 1123(b)(5), 1129(b)(2)(A)(iii), 1145, and 1146(a) of the Bankruptcy Code, the sale and transfer to (i) Sparrow Offshore Capital Ltd. of 100% of the equity interest in Offshore Business Holding Company is approved and (ii) to Sparrow River Investment Investments Ltd. of the New River Business Holding Company Common Stock, in each case, is approved. The Debtors are authorized to sell (i) to Sparrow River Investments Ltd. 100% of the New River Business

Holding Company Common Stock, free and clear of any and all claims, interests, liens, and encumbrances of the Noteholders, the Indenture Trustee, the IFC Lender, the OFID Lender, the Security Trustees, and of any other claims, interests (including equity interests), liens and encumbrances, and (ii) to Sparrow Offshore Capital Ltd. 100% of the Offshore Holding Company Stock free and clear of any and all claims, interests (including equity interests), liens and encumbrances, except for claims, interests, liens, and encumbrances held by or for the benefit of, as the case may be the Offshore Lenders or the Offshore Agents provided in or contemplated by the Offshore Business RSA, the Offshore Common Terms Agreement, the Offshore Loan Agreements or any document, agreement or instrument executed and/or delivered in connection with the Offshore Business RSA, the Offshore Common Terms Agreement or the Offshore Loan Agreements.

13. **Continued Corporate Existence and Vesting of Assets.** Except as otherwise provided herein: (i) each Debtor shall, as a Reorganized Debtor, continue to exist after the Effective Date as a separate legal entity, with all of the powers of such a legal entity under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, dissolution or otherwise) under applicable law, and (ii) on the Effective Date, all property of each Debtor's Estate, and any property acquired by such Debtor or Reorganized Debtor during the pendency of the Reorganization Cases or under the Plan, shall vest in such Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances, Equity Interests and other interests, except for the Liens and Claims established under the Plan. Except as otherwise provided herein, on and after the Effective Date, each of the Reorganized Debtors may operate its businesses and may use, acquire and dispose of property and compromise or settle any Claims without supervision or approval by the Court and free of any restrictions of the

34

Bankruptcy Code or Bankruptcy Rules, subject only to those restrictions expressly imposed by the Plan or this Order as well as the documents and instruments executed and delivered in connection therewith, including the documents, exhibits, instruments and other materials comprising the Plan Supplement. Without limiting the foregoing, the Reorganized Debtors may pay the charges that they incur from and after the Effective Date for Fee Claims, disbursements, expenses or related support services (including fees relating to the preparation of Professional fee applications) without application to, or the approval of, the Court.   Notwithstanding the foregoing, from and after the Effective Date, Parent shall continue to engage in business only to the extent reasonably necessary to wind up its affairs in an orderly manner and make the distributions under the Plan, and perform its obligations under the Offshore Business RSA and the Offshore Common Terms Agreement, or as it deems appropriate for other purposes so long as not otherwise inconsistent with the Plan.   Specifically with regard to Parent, the Reorganized Debtors, Sparrow River Investments Ltd., Sparrow Offshore Investments Ltd., and Sparrow Offshore Capital Ltd. shall have full authority to take, and may take as appropriate any action necessary in connection with winding up the affairs, liquidation, transferring, or abandoning assets, and the dissolution and termination of the existence of Parent in a manner and in accordance with the best means to maximize assets and minimize expenses or costs associated with such liquidation under the laws of the Bahamas and in accordance with the rights, powers, and responsibilities conferred by the Bankruptcy Code, the Plan, the Offshore Business RSA, and any order of this Court, including but not limited to the payment of fees and expenses in connection with any of the foregoing.   The board of directors of the Parent, acting in accordance with and as required by Bahamas law, may forego the liquidation of Parent if it agrees, in its sole discretion, prior to or after the Effective Date, that the costs and expenses associated with

liquidation outweigh the benefits of maintaining the corporate existence of Parent or if such liquidation is prohibited or not possible under applicable Bahamas law.

14.    **General Settlement of Claims and Equity Interests**. As one element of, and in consideration for, an overall negotiated settlement of numerous disputed Claims and issues embodied in the Plan, the provisions of the Plan shall, upon consummation, constitute a good-faith compromise and settlement, pursuant to Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code, of all Claims and controversies.

15.    **Executory Contracts and Unexpired Leases.**   The assumption or rejection of executory contracts and unexpired leases of the Plan Debtors pursuant to Article VIII of the Plan is approved in all respects pursuant to sections 365 and 1123(b) of the Bankruptcy Code.   The executory contracts and unexpired leases assumed pursuant to Article VIII of the Plan are assumed effective as of the respective dates set forth in Article VIII.A of the Plan. "Adequate assurance of future performance" (within the meaning of sections 365 and 1123(b) of the Bankruptcy Code) by the Reorganized Debtors has been demonstrated with respect to the assumed executory contracts and unexpired leases and no further adequate assurance is required.

16.    **Discharge**.  The Plan discharge provision set forth in Article V.C of the Plan is approved in all respects, is incorporated herein in its entirety, and is so ordered and shall be immediately effective on the Effective Date of the Plan without further order or action on the part of the Court or any other party.

17.    Pursuant to section 1141(d) of the Bankruptcy Code, to the fullest extent permissible under the law, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights and treatment that are provided in the Plan shall be in complete satisfaction,

discharge and release of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Equity Interests and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Equity Interests from and after the Commencement Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against and Equity Interests in, the Plan Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Equity Interests, including demands, liabilities and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Equity Interests relate to services performed by employees of the Plan Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not: (i) a Proof of Claim based upon such debt, right or Equity Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim or Equity Interest based upon such debt, right or Equity Interest is Allowed, or (iii) the holder of such a Claim or Equity Interest has accepted the Plan or is entitled to receive a distribution hereunder. Any default by the Plan Debtors or their affiliates with respect to any Claim or Equity Interest that existed immediately before or on account of the filing of the Reorganization Cases shall be deemed cured on the Effective Date.

18.    **Injunction**. The Plan injunction provisions set forth in Article V.D of the Plan are approved in all respects, are incorporated herein in their entirety, are so ordered and shall be immediately effective on the Effective Date of the Plan without further order or action on the part of the Court or any other party.

19.     From and after the Effective Date, all persons are permanently enjoined from commencing or continuing in any manner, any Cause of Action released or to be released pursuant to the Plan or this Order.

20.     From and after the Effective Date, to the extent of the Releases and Exculpation granted in Article V.H of the Plan, the Releasing Parties shall be permanently enjoined from commencing or continuing in any manner against the Released Parties and their assets and properties, as the case may be, any suit, Cause of Action, or other proceeding, on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, Equity Interest or remedy released or to be released pursuant to Article V.H of the Plan or this Order.

21.     Except as otherwise expressly provided in the Plan, the Plan Supplement or related documents, or for obligations issued pursuant to the Plan, all Persons who have held, hold or may hold Claims or Equity Interests that have been released pursuant to Article V.H.a-d or discharged pursuant to Article V.C or are subject to exculpation pursuant to Article V.H.e are permanently enjoined, from and after the Effective Date, from taking any of the following actions: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree or order against such Released Parties on account of or in connection with or with respect to any such Claims or Equity Interests; (iii) creating, perfecting, or enforcing any encumbrance of any kind against such Released Parties or the property or estate of such Released Parties on account of or in connection with or with respect to any such Claims or Equity Interests; (iv) asserting any right of setoff or subrogation of any kind against any obligations due from the

Plan Debtors or the Reorganized Debtors or against the property or interests in property of the

Plan Debtors on account of any such Claim; and (v) commencing or continuing in any manner

any action or other proceeding of any kind on account of or in connection with or with respect to

any such Claims or Equity Interests released, settled or discharged pursuant to the Plan.

22.     The rights afforded in the Plan and the treatment of all Claims and Equity

Interests therein shall be in exchange for and in complete satisfaction of all Claims and Equity

Interests of any nature whatsoever, including any interest accrued on Claims from and after the

Commencement Date, against the Plan Debtors or any of their assets, property or Estates. On the

Effective Date, all such Claims against the Plan Debtors shall be fully released and discharged.

23.     Except as otherwise expressly provided for herein or in the Plan, the Plan

Supplement, or related documents, or in obligations issued pursuant to the Plan from and after

the Effective Date, all Claims against the Plan Debtors shall be fully released and discharged,

and all Equity Interests shall be cancelled, and the Plan Debtors' liability with respect thereto

shall be extinguished completely, including any liability of the kind specified under section

502(g) of the Bankruptcy Code.

24.     Except as otherwise expressly provided herein or in the Plan, the Plan

Supplement or related documents, or for obligations issued pursuant to the Plan, all persons shall

be precluded from asserting against the Plan Debtors, the Plan Debtors' Estates, the Reorganized

Debtors, each of their respective successors and assigns, and each of their assets and properties,

and each of the Released Parties, any other Claims or Equity Interests based upon any

documents, or instruments or any act or omission, transaction or other activity of any kind or

nature that occurred before the Effective Date.

25.    **Releases and Exculpations of Released Parties**.  The Releases set forth
in Article V.H of the Plan are approved in all respects, are incorporated herein in their entirety,
are so ordered and shall be immediately effective on the Effective Date of the Plan without
further order or action on the part of the Court, any of the parties to such Releases or any other
party.

(a) **Releases by the Plan Debtors**. On the Effective Date, except for
the right to enforce the Plan, the Definitive Documents, and the Offshore Restructuring
Definitive Documents that remain in effect after the Effective Date, for good and valuable
consideration, including, without limitation, the Released Parties' contributions to facilitating the
reorganization and implementing the Plan, the Released Parties are deemed conclusively,
absolutely, unconditionally, irrevocably, and forever released and discharged by the Plan
Debtors, their Estates and the Reorganized Debtors from (and the Plan Debtors, their Estates, and
the Reorganized Debtors are deemed to covenant with, and to, the Released Parties not to sue or
otherwise seek recovery from the Released Parties on account of) any and all Claims, Interests,
obligations, rights, suits, judgments, damages, Causes of Action, remedies and liabilities
whatsoever, including, without limitation, any derivative claims, asserted or assertable on behalf
the Plan Debtors, whether known or unknown, foreseen or unforeseen, existing or hereafter
arising, in law, equity or otherwise, that the Plan Debtors, their Estates, or the Reorganized
Debtors, would have been legally entitled to assert in their own right (whether individually or
collectively) or on behalf of the holder of any Claim or Interest or other entity, based on or
relating to, or in any manner arising from, in whole or in part, the Plan Debtors, the restructuring,
the Reorganized Debtors, the Reorganization Cases, the purchase, sale or rescission of the
purchase or sale of any security of the Plan Debtors or Reorganized Debtors, the subject matter

of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the formulation or preparation of the Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreement, the Offshore Business RSA, the Offshore Business Restructuring Definitive Documents, the Investment Agreement or related agreements, instruments or other documents, the solicitation of votes with respect to the Plan, or upon any other act or omission, transaction, agreement, event or other occurrence taking place on or at any time before the Effective Date in connection with the foregoing; provided, however, that no Person shall be released from any act or omission that constitutes gross negligence, willful misconduct, or fraud as determined by a Final Order.

(b) **Releases by Holders of Claims and Equity Interests**. On the Effective Date, except for the right to enforce the Plan and the Definitive Documents and the Offshore Restructuring Definitive Documents that remain in effect or come into effect after the Effective Date, (i) each Releasing Party will be deemed to have forever released and covenanted with the Released Parties not to sue or otherwise seek recovery from any Released Party on account of any Claim, including any Claim or Cause of Action based upon tort, breach of contract, violations of federal or state securities laws or otherwise, or any other legal or equitable theory, based in whole or in part upon any act, occurrence, or failure to act from the beginning of time through the Effective Date in any way related to the Plan Debtors or their respective businesses and affairs (including without limitation any act or failure to act of the 2021 Notes Indenture Trustee in furtherance of a pre-petition sale of the Ocean Business in accordance with the Restructuring Support Agreement), and (ii) each Releasing Party will be deemed to have forever released and covenanted with the Released Parties not to assert against any Released Party any Claim, obligation, right, Cause of Action, or liability that any holder of a Claim may

be entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part on any act or omission, transaction, or occurrence from the beginning of time through the Effective Date in any way relating to the Plan Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Plan Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim, or Equity Interest, the Plan Debtors' restructuring, the Reorganization Cases, the Restructuring Support Agreement, the Offshore Business RSA, the Plan, the Disclosure Statement, the Investment Agreement, the Plan Supplement or any of the documents included therein, *provided*, *however*, the foregoing release will not apply to any act or omission that constitutes gross negligence, willful misconduct, or fraud as determined by a Final Order; and *provided*, *further*, that notwithstanding anything to the contrary contained in the Plan or this Order, the foregoing release shall not apply to any claim of a Releasing Party against a non-Debtor affiliate of a Plan Debtor in connection with a contract between such Releasing Party and non-Debtor affiliate.

(c) **Exculpation**. The Plan Debtors, the Reorganized Debtors, and the other Released Parties (i) shall have no liability whatsoever to any holder or purported holder of an Administrative Claim, Claim, or Equity Interest for any act or omission that occurred during and in connection with the Reorganization Cases or in connection with, or arising out of the preparation and filing of, the Reorganization Cases, the preparation and negotiation of the Restructuring Support Agreement or the Offshore Business RSA, the preparation, negotiation, and filing of the Plan, the Disclosure Statement, the negotiation of the documents included in the Plan Supplement, the pursuit of approval of the Disclosure Statement or the solicitation of votes for confirmation of the Plan, the Reorganization Cases, the consummation of the Plan, the

42

administration of the Plan or the property to be distributed under the Plan, or any transaction contemplated by or distributions made pursuant to the Plan or Disclosure Statement or in furtherance thereof except for any act or omission that constitutes willful misconduct or gross negligence as determined by a Final Order, and (ii) in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Released Parties from liability. Without limiting the generality of the foregoing, the Released Parties shall be entitled to and granted the protections and benefits of section 1125(e) of the Bankruptcy Code. Pursuant to section 105 of the Bankruptcy Code, no holder or purported holder of an Administrative Claim, Claim or Equity Interest shall be permitted to commence or continue any Cause of Action, employment of process, or any act to collect, offset, or recover any Claim against a Released Party that accrued on or before the Effective Date and that has been released or waived pursuant to the Plan.

26.    **Indemnification Obligations**. Subject to Article IV.O of the Plan, on and after the Effective Date, the Plan Debtors and Reorganized Debtors shall assume all indemnification obligations in place as of the Effective Date (whether in bylaws, certificates of incorporation, board resolutions, contracts, or otherwise) for the directors, officers, or employees, or Professionals of the Plan Debtors who served in those capacities on or after the Commencement Date. All such indemnification obligations shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged, irrespective of whether indemnification, defense, reimbursement or limitation is owed in connection with any event occurring before, on or after the Commencement Date.

27.        **Preservation of Insurance**. The Plan Debtors' discharge and release from all Claims as provided herein and in the Plan shall not diminish or impair the enforceability of any insurance policy that may provide coverage for Claims against the Plan Debtors, the Reorganized Debtors, their current and former directors and officers, or any other Person. Notwithstanding the foregoing, the preservation of insurance shall not impair nor diminish any Releases under the Plan.

28.        **Authorization of Issuance of Securities**. The issuance in accordance with the Plan of the New River Business Holding Company Common Stock is authorized without the need for any further corporate action and without any further action by any holder of a Claim or Equity Interest.  All of the New Common Stock, issuable in accordance with the Plan, when so issued, shall be duly authorized, validly issued, fully paid, and non-assessable.

29.        **Exemption from Transfer Taxes**. Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, all transfers of property pursuant hereto, including (i) the issuance, transfer or exchange under the Plan of New Common Stock, (ii) the making or assignment of any lease or sublease, or (iii) the making or delivery of any other instrument whatsoever, in furtherance of or in connection with the Plan, shall not be subject to any stamp, conveyance, mortgage, sales or use, real estate transfer, recording or other similar tax or governmental assessment, and upon entry of this Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

30.    **Plan Distributions**. On and after the Effective Date, distributions on account of Allowed Claims and the resolution and treatment of Disputed Claims shall be effectuated pursuant to Article VI of the Plan.

31.    **Preservation of Causes of Action**. In accordance with section 1123(b) of the Bankruptcy Code, and except as expressly provided for in the Plan or this Order, the Reorganized Debtors shall retain all Causes of Action, including those Causes of Action listed as retained Causes of Action on an exhibit to the Plan Supplement.  Nothing contained in the Plan, the Plan Supplement or this Order shall be deemed a waiver or relinquishment of any Claim, Cause of Action, right of set-off, or other legal or equitable defense of the Plan Debtors that is not specifically waived or relinquished by the Plan.  The Reorganized Debtors shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action, rights of set-off and other legal or equitable defenses that the Plan Debtors had immediately before the Commencement Date as fully as if the Reorganization Cases had not been commenced, and all of the Reorganized Debtors' legal and equitable rights respecting any Claim that is not specifically waived or relinquished by the Plan may be asserted after the Effective Date to the same extent as if the Reorganization Cases had not been commenced.  No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Plan Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against such Person.  The Plan Debtors or Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, in accordance with the Plan.  From and after the Effective Date, the Plan Debtors or Reorganized Debtors, as applicable, shall have the exclusive right, authority and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise,

release, withdraw or litigate to judgment any Cause of Action and to decline to do any of the foregoing without further notice to or action, order or approval of the Court. The Reorganized Debtors are deemed representatives of the Estates for the purpose of prosecuting any Claim or Cause of Action and any objections to Claims pursuant to 11 U.S.C. § 1123(b)(3)(B).

32.    **Substantive Consolidation**. Except as otherwise provided in the Plan, solely for voting, confirmation, and distribution purposes under the Plan, the Consolidated Debtors are substantively consolidated for all purposes and actions associated with consummation of the Plan, including, without limitation, for purposes of voting and confirmation, and, solely for such purposes, on and after the Effective Date, (a) all assets and liabilities of the Consolidated Debtors shall, for purposes of the Plan only, be consolidated and treated as though they were merged, (b) all guarantees of any Consolidated Debtor of the obligations of any other Consolidated Debtor shall be eliminated so that any Claim against any Consolidated Debtor, any guarantee thereof executed by any other Consolidated Debtor, and any joint or several liability of any of the Consolidated Debtors shall be one obligation of the Consolidated Debtors, (c) each and every Claim filed or to be filed in the Reorganization Cases against any of the Consolidated Debtors shall be deemed filed against the Consolidated Debtors collectively and shall be one Claim against and, if and to the extent allowed, shall become one obligation of the Consolidated Debtors solely for purposes of distribution under the Plan, and (d) for all purposes associated with Confirmation, including, without limitation, for purposes of tallying acceptances and rejections of the Plan, the estates of the Consolidated Debtors shall be deemed to be one consolidated estate.  For the avoidance of doubt, after the Effective Date, any Allowed Claim that is Reinstated under the Plan shall be an obligation solely of the applicable Reorganized Debtor against whom such Allowed Claim is held and shall be paid in accordance

with ordinary course terms.  Unless otherwise set forth herein or in the Plan, such substantive consolidation shall not affect: (a) the legal and organizational structures of the Consolidated Debtors, (b) Intercompany Claims and Equity Interests between and among the Consolidated Debtors, and (c) distributions from any insurance policies or proceeds of such policies.

33.    **Release of Liens**.  Except as otherwise expressly provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, stock pledges, account pledges, other pledges, and other security interests against any property of the Plan Debtors' Estates arising from or related to the 2021 Notes, the 2021 Notes Indenture, the IFC-OFID Loan Agreements, and the IFC-OFID Guarantees shall be fully released and discharged, and all of the right, title, and interest of the 2021 Noteholders, IFC, and OFID shall revert to the Reorganized Debtors and each of their successors and assigns. The 2021 Notes Indenture Trustee (subject to its receipt of payment under the Plan) and the IFC-OFID Security Trustees (subject to receipt by IFC and OFID of payments under the Plan) shall deliver to the Plan Debtors or Reorganized Debtors, as applicable, any Collateral or other property of the Debtors held by each respective entity, together with any termination statements, instruments of satisfaction, or releases of all securities interest that may be reasonably required to terminate any related financing statements, mortgages, or similar interest or documents.  Except as otherwise expressly provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, stock pledges, account pledges, other pledges, and other security interests against any property of the Plan Debtors' Estates shall be fully released

and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, and other security interests shall revert to the Reorganized Debtors and each of their successors and assigns.  For the avoidance of doubt, promptly after the Effective Date, the IFC-OFID Security Trustees are authorized and directed to remit to IFC and OFID their respective balances in the Debt Service Reserve Accounts (net of fees and expenses of the IFC-OFID Security Trustees) in accordance with the instructions of Daniel P. Whitmore, Esquire, Mayer Brown LLP, dwhitmore@mayerbrown.com, 71 South Wacker Drive, Chicago, Illinois 60606-4637, T: 312 701 7134, or as otherwise instructed by IFC or OFID directly to the Security Trustees.  A copy of this Order may, but need not be, filed in the relevant filing offices as evidence of the termination of such liens, security interests, and pledges.

34.    **1145 Exemption**.  To the maximum extent permitted by operation of section 1145 of the Bankruptcy Code, the distribution of New Common Stock to be issued under the Plan is exempt from registration under the Securities Act and any state or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, or broker or dealer in, a security.  All such securities so issued shall be freely transferrable by the initial recipients thereof (a) except for any restrictions set forth in section 1145(b) of the Bankruptcy Code and (b) subject to any restriction contained in the terms of such securities themselves, in the Plan, the Disclosure Statement, or in any other documents related to the Plan or executed in connection with the effectiveness thereof.

35.    **Substantial Consumation**.  The substantial consummation of the Plan, within the meaning of section 1127 of the Bankruptcy Code, is deemed to occur on the Effective Date.

36.  **Disputed Claims**.  Any objections to, and requests for estimations of, Claims and Equity Interests, shall be served and filed in accordance with Article VI.A of the Plan.

37.  **Professional Compensation and Reimbursement**.  Except as otherwise ordered by the Court, on or before the date that is forty-five (45) days after the Effective Date (or if such forty-fifth (45th) day is not a Business Day, the first Business Day thereafter), each professional or other entity requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 503(b), and 1103 of the Bankruptcy Code for services rendered prior to the Effective Date (including compensation requested pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code or other entity for making a substantial contribution in the Debtors' Reorganization Cases) shall file an application for final allowance of compensation and reimbursement of expenses with the Court (a "Final Fee Application"), together with proof of service thereof, and shall serve such Final Fee Application on (i) VIA EMAIL ONLY upon the proposed attorneys for the Debtors, Zirinsky Law Partners PLLC, 375 Park Avenue, Suite 2607, New York, New York 10152 (Attn: Bruce R. Zirinsky, Esq. (bzirinsky@zirinskylaw.com), Sharon J. Richardson, Esq. (srichardson@zirinskylaw.com), and Gary D. Ticoll, Esq. (gticoll@zirinskylaw.com)) and Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York 10004 (Attn: Christopher K. Kiplok, Esq. (chris.kiplok@hugheshubbard.com) and Jeffrey S. Margolin, Esq. (jeff.margolin@hugheshubbard.com)), and (ii) VIA US MAIL, HAND DELIVERY, OR OVERNIGHT DELIVERY SERVICE upon (a) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, New York, NY 10014-4811 (Attn: Susan Arbeit, Esq.) (susan.arbeit@usdoj.gov)), (b) counsel to the informal committee of unaffiliated

holders of Ultrapetrol's 2021 Notes, Milbank, Tweed, Hadley & McCloy LLP, 2029 Century Park East, 33rd Floor, Los Angeles, California 90067 (Attn: Eric R. Reimer, Esq. (ereimer@milbank.com)) and Milbank, Tweed, Hadley & McCoy LLP, 28 Liberty Street, New York, NY 10005 (Attn: Tyson M. Lomazow, Esq. (tlomazow@milbank.com)), (c) counsel to IFC and OFID, Mayer Brown LLP, 71 S. Wacker Drive, Chicago, Illinois 60606 (Attn: Daniel P. Whitmore, Esq. (dwhitmore@mayerbrown.com) and Sean T. Scott, Esq. (stscott@mayerbrown.com)), (d) counsel to the agents under the Offshore Loan Agreements, White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036 (Attn: Scott Greissman, Esq. (sgreissman@whitecase.com) and Mark Franke, Esq. (mark.franke@whitecase.com)), (e) counsel to Sparrow, Chadbourne & Parke LLP, 1301 Ave. of the Americas, New York, New York 10019 (Attn: Morton E. Grosz, Esq. (mgrosz@chadbourne.com), Kevin C. Smith, Esq. (ksmith@chadbourne.com), and Andrew Rosenblatt, Esq. (arosenblatt@chadbourne.com)), and (f) all parties having filed requests for notices in these cases pursuant to Fed. R. Bankr. P. 2002 (collectively, the "Notice Parties"), with a copy to chambers. Final Fee Applications shall show and reflect the application of any retainers in connection with the Debtors' Reorganization Cases.

38.    Objections and responses, if any, to any Final Fee Application shall be filed with the Court, together with proof of service thereof, and served upon the applicant and each of the Notice Parties, with a copy to chambers, so as to be actually received not later than 4:00 p.m. (Eastern Daylight Time) on the date that is the sixty-sixth (66th) day after the Effective Date, or if such sixty-sixth (66th) day is not a Business Day, the first Business Day thereafter.

39.    Without further order or authorization of the Court, the Plan Debtors and the Reorganized Debtors, as applicable, are authorized to retain professionals and pay, in the

ordinary course of business, compensation for services rendered and reimbursement of expenses incurred by professionals on and after the Effective Date.

40.     **Fees and Expenses of 2021 Notes Indenture Trustee, IFC-OFID Security Trustee, Registrar, and Paying Agent**.  In accordance with Article II.E of the Plan, the reasonable prepetition and postpetition fees and expenses of each of the 2021 Notes Indenture Trustee, the IFC-OFID Security Trustees, the Registrar (as defined in the 2021 Notes Indenture) and the Paying Agent (as defined in the 2021 Notes Indenture), solely in connection with their performance of their duties and to the extent set forth in Section 3(h) of the Restructuring Support Agreement, (i) shall be paid in the ordinary course of business in accordance with, and subject to the conditions, of the Restructuring Support Agreement and any agreements governing, instruments evidencing, or other documents relating to, such transactions, (ii) shall be deemed Allowed Administrative Claims, and (iii) to the extent not previously paid directly by the Plan Debtors pursuant to the Restructuring Support Agreement, shall be paid in Cash on the Effective Date, or as soon thereafter as is reasonably practicable, upon submission of the documented invoices (in customary form) to the Plan Debtors, subject to a review for reasonableness by the Plan Debtors, without the necessity of making application to the Bankruptcy Court.  Each charging lien of Indenture Trustee, the IFC-OFID Security Trustees, Registrar and Paying Agent, if any, shall be discharged solely upon payment in full of the respective fees and expenses of the Indenture Trustee, the IFC-OFID Security Trustees, Registrar or Paying Agent, as applicable, and termination of the duties of the Indenture Trustee, the IFC-OFID Security Trustees, Registrar or Paying Agent, as applicable.  Nothing herein shall be deemed to impair, waive, or discharge any charging liens of the Indenture Trustee, the IFC-OFID Security Trustees, Registrar or Paying Agent for any fees and expenses not paid previously.

41.  **Cancellation of Existing Securities**. On the Effective Date, except as otherwise specifically provided for in the Plan: (i) the obligations of the Plan Debtors under the 2021 Notes, the IFC-OFID Loan Agreements, the IFC-OFID Guarantees, the IFC-OFID Parent Guarantees, and Offshore Lender Parent Guarantee and any other certificate, share, note, bond, indenture, purchase right, option, warrant or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in a Plan Debtor giving rise to any Claim or Equity Interest (except such certificates, notes or other instruments or documents evidencing indebtedness or obligations of a Debtor that are specifically reinstated pursuant to the Plan), shall be cancelled as to such Debtor, (and the securities deemed surrendered), and the applicable Reorganized Debtor shall not have any continuing obligations thereunder; and (ii) the obligations of a Debtor pursuant, relating or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of such Debtor (except such agreements, certificates, notes or other instruments evidencing indebtedness or obligations of a Debtor that are specifically reinstated pursuant to the Plan or assumed by a Debtor) shall be released and discharged; provided, however, that notwithstanding the occurrence of the Confirmation Date or the Effective Date, any such indenture or agreement that governs the rights of the holder of a Claim shall continue in effect solely for purposes of (a) allowing holders of 2021 Note Claims and IFC-OFID Claims to receive distributions under the Plan as provided herein, and (b) allowing the 2021 Notes Indenture Trustee and the IFC-OFID Security Trustees to make distributions under the Plan.  For the avoidance of doubt, nothing in this paragraph shall affect the discharge of or result in any

obligation, liability or expense of the Plan Debtors or Reorganized Debtors or affect the discharge of Claims or Equity Interests pursuant to the Bankruptcy Code, this Order or the Plan, or result in any additional obligation, expense or liability of the Plan Debtors or Reorganized Debtors. On and after the Effective Date, all duties and responsibilities of the 2021 Notes Indenture Trustee and the IFC-OFID Security Trustees shall be discharged except to the extent required to effectuate the Plan.

42.    **Retention of Jurisdiction**.  Except as otherwise provided under the terms of any documents, agreements or instruments included in the Plan Supplement, including, without limitation, the Offshore Business RSA and the Offshore Common Terms Agreement, or any documents, agreements or instruments executed or delivered in connection with any such documents, agreements or instruments included in the Plan Supplement, upon the Effective Date, the Court shall retain jurisdiction as provided in Article VII of the Plan to the fullest extent permitted by law.  Article VII of the Plan shall not be construed to expand or limit the Court's jurisdiction beyond that allowed by applicable law.

43.    **Efficacy of Plan**.  The failure to specifically include any particular provisions of the Plan in this Order shall not diminish or impair the efficacy of such provisions, it being understood the intent of this Court that the Plan be confirmed and approved in its entirety. To the extent of any inconsistency between the Plan and this Order, the terms and conditions of this Order shall govern.  The provisions of this Order are integrated with each other and are nonseverable and mutually dependent unless expressly stated by further order of the Court.

44.    **Notice**.  On the Effective Date, or as soon thereafter as practicable, the Plan Debtors shall (a) serve notice of the entry of this Order and the occurrence of the Effective Date, substantially in the form attached hereto as Exhibit B, which notice is hereby approved in

all respects (the "Confirmation and Effective Date Notice"), upon each of the following at their respective addresses last known to the Plan Debtors: (i) the parties to the Restructuring Support Agreement, (ii) the parties listed on the Plan Debtors' creditor matrix, (iii) all equity security holders of record as of the Effective Date, (iv) any other known holders of claims or equity interests in the Plan Debtors, (v) counterparties to the Plan Debtors' executory contracts and unexpired leases rejected pursuant to the Plan (if any), (vi) the U.S. Trustee, (vii) the Securities and Exchange Commission, and (viii) all parties having filed requests for notices in these Reorganization Cases and (b) post the Confirmation and Effective Date Notice on the website maintained in these cases by the Plan Debtors' noticing agent: https://cases.primeclerk.com/Ultrapetrol.    Service and posting of such notice as soon as practicable after the Effective Date shall be deemed to have occurred promptly after entry of this Order, and such notice shall constitute good and sufficient notice (x) pursuant to Fed. R. Bankr. P. 2002(f)(7), 2002(j), 2002(k), and 3020(c)(2) of confirmation of the Plan and entry of this Order, (y) pursuant to Fed. R. Bankr. P. 2002(a)(6) of any hearing scheduled by the Court to consider Final Fee Applications, and (z) of the occurrence of the Effective Date, and no other or further notice need be given.

45.    Reports and Final Decree. The Plan Administrator shall promptly upon the full administration of this case seek the entry of a final decree under Bankruptcy Rule 3022 closing this case and, pending such request, file a report every 6 months with respect to the implementation of the Plan.

Dated: White Plains, New York
         March 17, 2017

/s/Robert D. Drain
United States Bankruptcy Judge

EXHIBIT A

EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x

In re                                              :    **Chapter 11 Case No.**

**ULTRAPETROL (BAHAMAS) LIMITED**, *et al.*,    :    **17-22168 (RDD)**

                                    Debtors.[1]    :    **(Jointly Administered)**

--------------------------------------------------------------------x

**NOTICE OF (I) ENTRY OF ORDER CONFIRMING THE SECOND AMENDED**
**PREPACKAGED JOINT PLAN OF REORGANIZATION PURSUANT TO CHAPTER**
**11 OF THE BANKRUPTCY CODE AND (II) OCCURRENCE OF EFFECTIVE DATE**

**TO ALL CREDITORS, INTEREST HOLDERS, AND OTHER PARTIES IN INTEREST:**

PLEASE TAKE NOTICE that an order [ECF No. ___] (the "Confirmation

Order") confirming the Second Amended Prepackaged Joint Plan of Reorganization Pursuant to

Chapter 11 of the Bankruptcy Code (as may be amended, modified, or supplemented from time

to time, the "Plan"), of Ultrapetrol (Bahamas) Limited and certain of its wholly-owned direct and

indirect subsidiaries, as debtors and debtors in possession (collectively, the "Debtors") (as may

be modified, the "Plan"), was entered by the Honorable Robert D. Drain, United States

Bankruptcy Judge, and docketed by the Clerk of the United States Bankruptcy Court for the

Southern District of New York (the "Court") on _____, 2017.  Unless otherwise

defined in this notice, capitalized terms used in this notice shall have the meanings ascribed to

them in the Plan and the Confirmation Order.

---

1.    The Debtors in these chapter 11 cases are the following entities: Ultrapetrol (Bahamas) Limited; Arlene
      Investments, Inc.; Brinkley Shipping Inc.; Cedarino S.A.; Compañia Paraguaya De Transporte Fluvial S.A.;
      Dampierre Holdings Spain, S.A.; Danube Maritime Inc.; Dingle Barges Inc.; Eastham Barges Inc.; General
      Ventures Inc.; Hallandale Commercial Corp.; Longmoor Holdings Inc.; Marine Financial Investment Corp.;
      Massena Port S.A.; Oceanpar S.A.; Parabal S.A.; Parfina S.A.; Princely International Finance Corp.; Regal
      International Investments S.A.; Riverpar S.A.; Riverview Commercial Corp.; Thurston Shipping Inc.; UABL
      Barges (Panama) Inc.; UABL Limited; UABL Paraguay S.A.; UABL Towing Services S.A.; UABL S.A.;
      Ultrapetrol S.A.; UPB (Panama) Inc.; UP River (Holdings) Ltd. (Bahamas); and UP River Terminals (Panama)
      S.A.  The foreign equivalent of an EIN, if any, for each Debtor is set forth in its chapter 11 petition.

**PLEASE TAKE FURTHER NOTICE** that copies of the Confirmation Order, the Plan, and the related documents, are available on the Court's website at http://www.nysb.uscourts.gov. To access the Court's website, you will need a PACER password and login, which can be obtained at http://www.pacer.psc.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE** that the Effective Date occurred on _____, 2017.

**PLEASE TAKE FURTHER NOTICE** that the Plan and its provisions are binding on the Debtors, the Reorganized Debtors, any Holder of a Claim against, or Equity Interest in, the Debtors and such Holder's respective successors and assigns, whether or not the Claim or Equity Interest of such Holder is Impaired under the Plan and whether or not such Holder or Entity voted to accept the Plan.

Dated: New York, New York
       March ___, 2017

                                           _____
Bruce R. Zirinsky
Sharon J. Richardson
Gary D. Ticoll
ZIRINSKY LAW PARTNERS PLLC
375 Park Avenue, Suite 2607
New York, New York 10152
(212) 763-0192
bzirinsky@zirinskylaw.com
srichardson@zirinskylaw.com
gticoll@zirinskylaw.com

Christopher K. Kiplok
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
(212) 837-6000
chris.kiplok@hugheshubbard.com

*Attorneys for the Debtors and Debtors in Possession*

2